UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

  v.                                      Case No. 20-CR-143

JOSHUA D. WICKS,

          Defendant.

REPORT AND RECOMMENDATION

1. **Procedural History**

On August 11, 2020, the grand jury returned an indictment against Joshua Wicks, charging him with knowingly possessing a firearm that had been transported in interstate commerce when he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 1.) On October 16, 2020, Wicks filed a motion to suppress evidence found in his bedroom during a search conducted on May 29, 2020 and request for an evidentiary hearing. (ECF No. 16 at 1.) The motion does not identify what evidence it seeks to suppress.

After the motion was fully briefed, an evidentiary hearing was held on February 26, 2021. For the reasons that follow, the court recommends that Wicks's motion be denied.

**2.   Background**

The following facts are taken from the parties' briefs, accompanying exhibits, and the evidentiary hearing.

On May 20, 2020, a group of individuals transported a shooting victim to St. Joseph's Hospital. (ECF No. 26 at 2.) Officers from Milwaukee County Sheriff's Office (MCSO) and City of Milwaukee Police Department responded to St. Joseph's Hospital and conducted field interviews of several individuals. (Id. at 2.) While officers were conducting the interviews, one of the individuals jumped into the car used to transport the shooting victim. Multiple officers attempted to remove him from the car, but he drove away while the officers were within the open door frame. (Id. at 2.)

Later than evening, MCSO located the car. Officers recovered from the car, among other things, clothing with the shooting victim's blood on it, a rifle, ammunition, and marijuana. (ECF No. 26 at 2-3.)

Law enforcement officers were able to identify defendant Joshua Wicks as the individual who took the car and fled from law enforcement officers. (ECF No. 26 at 3.)

During the course of their investigation, law enforcement officers learned that Wicks was on Wisconsin Department of Corrections (DOC) felony probation supervision

2

for a felony conviction ("Vehicle Operator Attempting to Flee/Elude Officer") in Milwaukee County Circuit Court case number 2019CF001694. (ECF No. 26 at 3.) MCSO Detective Todd Rosenstein contacted Wicks's DOC probation agent, Nicholas Doherty, to provide notification of Wicks's criminal law violation(s). (Id. at 3.) The conduct was in violation of Wicks's "Rules of Supervision." (Id. at 3.) On May 28, 2020, Doherty issued an Apprehension Request for Wicks for "Fleeing and Eluding." (ECF No. 26-2 at 1.)

On May 29, 2020, MCSO and FBI law enforcement officers went to Wicks's residence. After receiving consent to enter the residence, they spoke with George Wicks, the owner of the residence and Joshua Wicks's uncle (ECF No. 26 at 4.) Joshua Wicks came down from the second floor of the home, and was met by law enforcement officers, at which point a he was arrested. (Id.)

Detective Rosenstein requested and received both oral and written consent from George Wicks to search Joshua Wicks's bedroom on the second floor of the house. (ECF No. 26 at 4; ECF No. 26-3.) George Wicks acknowledges that the conversation he had with Detective Rosenstein prior to consenting to the search was friendly, cordial, and non-threatening.

Law enforcement officers walked up the same stairway that Joshua Wicks had walked down. (ECF No. 26 at 4.) At the top of the stairs officers observed a bedroom, the door to which was standing wide open. (Id.) Without entering the room, officers observed

3

Case 2:20-cr-00143-JPS     Filed 03/05/21     Page 3 of 9     Document 35

a rifle hanging by a strap on the outside of a closet door. (ECF No. 26-7.) During a subsequent search of the bedroom officers located and seized

> thirty-two (32) dice, a .22 caliber pistol magazine, sixty-five (65) rounds of ammunition, a digital scale with marijuana residue, a laser for a Taurus weapon, personal identifiers for Wicks, and a loaded GSG-5 .22 caliber semi-automatic rifle, bearing serial number A330543 hanging in plain view on the outside of the closet door.

(ECF No. 26 at 4-5.)

That same day, MCSO Detective Rosenstein contacted DOC Agent Doherty to notify him of Wicks's arrest and information relating to the search, including seizure of a firearm. (Id. at 5.)

### 3. Motion to Suppress Standard

The Fourth Amendment to the United States Constitution provides, in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Riley v. California*, 573 U.S. 373, 381-82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "[W]hen law enforcement officials search for evidence of criminal wrongdoing, reasonableness generally necessitates obtainment of a judicial warrant." *United States v. Brixen*, 908 F.3d 276, 280 (7th Cir. 2018) (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). "Such a warrant ensures that the

inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Riley*, 573 U.S. at 382 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).

When moving to suppress fruits of a search, a defendant bears "the burden of demonstrating both that he held an actual subjective expectation of privacy and that the expectation 'is one that society is prepared to recognize as reasonable.'" *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (quoting *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007).

**4.  Analysis**

In support of his motion to suppress Wicks puts forth three arguments: homeowner George Wicks's consent to search was involuntary; George Wicks did not have authority to consent to a search of Joshua Wicks's bedroom; and the search cannot be justified as a valid search under 2013 Wisconsin Act 79. (ECF No. 27 at 9.)

The government makes three arguments in response: George Wicks provided lawful consent to the search, the search was permissible under 13 Wisconsin Act 79, and the search was permissible as a protective sweep. (ECF No. 26.)

Act 79 states:

> If a person is placed on probation for a felony or for any violation of ch. 940, 948, or 961, the person, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation. Any search conducted pursuant to this

> subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing. A law enforcement officer who conducts a search pursuant to this subsection shall, as soon as practicable after the search, notify the department of corrections.

Wis. Stat. § 973.09 (1d).

Wicks does not dispute that he is a person on probation for a felony and, therefore, was subject to Act 79. Nor does he dispute that the officers who conducted the search reasonably suspected that he had committed a crime or a violation of a condition of his probation. Nor does Wicks contend that the search was arbitrary or capricious. While he argues that the search was harassing (ECF No. 16 at 8), the basis for the argument is the officers' alleged "threat" to George Wicks that they were going to "toss" his home if they were required to get a warrant to conduct the search. But at the hearing George Wicks testified that the officers never threatened to "toss" his home if he refused to consent to a search.

Wicks's argument that the search cannot be justified under Act 79 is based primarily on the absence of any reference to Act 79 as a justification for the search at the time it was conducted. He states that "there is no mention of Act 79 in the reports or discovery." (ECF No. 16 at 6.) Although Wicks doesn't (indeed, can't) dispute that Detective Rosenstein called Wicks's probation agent, Doherty, prior to the May 29 search to inform him that Wicks was a suspect in a fleeing offense, and also told Doherty after the search that officers found a gun in Wicks's bedroom, Wicks argues that "[i]t does not appear as though there was ever any allusion to Act 79 as a justification for the search

until the defense conferred with the government about challenging the search." (ECF No. 16 at 7.) As such, according to Wicks, the search cannot be upheld on the basis of Act 79.

The government asserts that Act 79 "does not dictate the manner in which officers provide notification to DOC regarding the executed search of probationer's residence." (ECF No. 26 at 6.) It argues that the law "does not require officers provide an explicit reference to Act 79 in their reports." (ECF No. 26 at 8.) All the Act requires is that law enforcement notify the DOC "as soon as practicable after the search." (Id.) (quoting Wis. Stat. § 973.09(1d)). And here Detective Rosenstein notified Agent Doherty of the search the same day the search occurred. (Id. at 5.)

As stated above, Act 79 states that "[a] law enforcement officer who conducts a search pursuant to this subsection shall, as soon as practicable after the search, notify the department of corrections." Wis. Stat. § 973.09(1d). Wicks's interpretation of the statute would add the words, "that an Act 79 search has been conducted." But no such language is in the Act. Nothing in the Act requires that the notice state specifically that the search was conducted pursuant to Act 79. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003) (interpreting a statute to avoid odd results).

Wicks alternatively argues that Act 79 searches must "be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing." (ECF No. 16 at 7) (quoting Wis. Stat. § 973.09(1d)). According to Wicks, "[t]he reasonableness requirement of Act 79

7

implies a nexus must exist between the suspected violation and the area searched." (Id.) He argues that

> the police lacked reason to suspect that Joshua Wicks' bedroom contained contraband related to the suspected violations of his probation. The offense he was suspected of being involved in was a traffic violation that had occurred nine days earlier. Fleeing or resisting an officer just aren't the type of violations where one would reasonably expect to find evidence in a bedroom.

(ECF No. 16 at 7-8.) (Footnote omitted.)

In response, the government states that, even if Wicks was only being investigated for fleeing or resisting, officers could still "reasonably expect to find in a bedroom the suspected clothing worn" during the flight and resistance. (ECF No. 26 at 9.) But when considering the evidence the officers found in the car in which Wicks fled, they could also reasonably expect to find in Wicks's bedroom evidence of, among other things, illegal firearm and narcotics possession. (Id.)

The court agrees. Wicks was not just being investigated for fleeing the officers or resisting arrest. After law enforcement recovered the car in which Wicks fled, they discovered a firearm, ammunition, and marijuana, all of which Wicks was prohibited from possessing. Given that, there is no basis for Wicks's argument that the search violated Act 79 because it was not conducted in a reasonable manner.

In short, the search of Wicks's bedroom was proper under Act 79. As such, there is no basis to suppress the evidence seized. There is also no need to determine whether George Wicks had the authority to consent to a search of Joshua Wicks's bedroom or

8
Case 2:20-cr-00143-JPS    Filed 03/05/21    Page 8 of 9    Document 35

whether the search was justified as a protective sweep. The court therefore recommends that the motion to suppress be denied.

5.  **Conclusion**

**IT IS THEREFORE RECOMMENDED** that the motion to suppress (ECF No. 16) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 5th day of March, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

9
Case 2:20-cr-00143-JPS    Filed 03/05/21    Page 9 of 9    Document 35